Filed 5/6/22  P. v. Love CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DAVID LOVE,<br><br>      Defendant and Appellant. | D078754<br><br>(Super. Ct. No. CR61373)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on April 18, 2022, be modified as follows:

On page 19, add the following paragraph just before the Disposition:

### 3.  No Prejudicial Evidentiary Error

The same abundant evidence that leads us to conclude substantial evidence supports the trial court's finding beyond a reasonable doubt that Love was a major participant in the underlying felony who acted with reckless indifference to human life likewise leads us to conclude it was not reasonably probable Love would have obtained a more

favorable result at the evidentiary hearing had the trial court excluded the challenged evidence. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [applying the *People v. Watson* (1956) 46 Cal.2d 818 prejudice standard to claimed evidentiary error at § 1170.95 evidentiary hearing].) We reach this conclusion based on our thorough review of the entire appellate record, without presuming in favor of the judgment.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

HALLER, J.

Copies to: All parties

Filed 4/18/22  P. v. Love CA4/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DAVID LOVE, <br><br>     Defendant and Appellant. | D078754 <br><br><br> (Super. Ct. No. CR61373) |


APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Helen Irza and Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, A. Natasha Cortina, Alan L. Amann and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

In 1983, David Love pleaded guilty to one count of second degree murder.[1] As the factual basis for his plea, Love acknowledged he and two accomplices entered a residence with the intent to steal; they struggled with the occupant; and the occupant died as a proximate result of injuries inflicted during the struggle. The trial court sentenced Love to 15 years to life.

In 2019, Love filed a petition for resentencing under newly enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which narrowed the circumstances under which an individual can be convicted under the felony-murder rule (Pen. Code, §§ 188, 189)[2] and provides a mechanism for resentencing of individuals whose convictions would not meet the new standard (§ 1170.95). After issuing an order to show cause and conducting an evidentiary hearing, the trial court denied Love's petition, finding he could still be convicted under the felony-murder rule because he was a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e)(3).)

Love contends the trial court erred in denying his petition because the court relied on inadmissible evidence and, in any event, the court's findings are not supported by substantial evidence. We conclude Love has not met his appellate burden of showing prejudicial error because substantial evidence supports the trial court's findings even without considering the challenged evidence.

Accordingly, we affirm the trial court's order denying Love's petition.

---

[1] At the time, Love was also known as David Dew. Because the 1983 criminal complaint and the appealed order refer to appellant by the surname Love, we will do the same.

[2] Further undesignated statutory references are to the Penal Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 1983, Love and codefendants Steven Ragland and Roy Patton (who was still at large) were charged with a single count of murder.

## A. Preliminary Hearing

In January 1983, a joint preliminary hearing was held as to Love and Ragland, and both were held to answer. Certain testimony was admitted as to Ragland but excluded as to Love on hearsay grounds. To provide full context, we summarize both the evidence admitted and excluded as to Love. However, in considering the sufficiency of the evidence supporting the trial court's ruling, we will consider only the evidence properly admitted as to Love.

### 1. Testimony Admitted as to Love

In 1982, Claude County lived in an apartment in Ocean Beach. On the afternoon of Thanksgiving Day, November 25, 1982, County's friend George went looking for County because he had not shown up for his usual morning coffee for several days and did not show up for a planned Thanksgiving dinner. George found County dead on the floor of County's apartment, with his hands tied behind his back, his feet bound, and a towel over his head. County's television, stereo, and two long-necked wine bottles were missing. George called the police.

County's apartment had been ransacked, and there was blood on the walls, furniture, a bowling trophy, a bowling pin, and on a knife with a two-inch blade.

An autopsy revealed County had bruised lips, broken teeth, breaks and discoloration on his tongue, a broken nose, and "line-like" injuries above and behind his right ear and to the back of his head. Although County did not have a "skull fracture, as such," there was an area of abrasion, bruising, and

3

bleeding at the base of his brain.  There was vomit in County's nose, mouth, trachea, lungs, and stomach.  A forensic pathologist determined County's cause of death was "cardiorespiratory failure, due to the injuries to his head, which would . . . not only include the blows to the back of his head, the blows to his mouth, but also the inhalation of the vomit."  County had not sustained any fatal knife wounds.

Two days before County's body was found, Love drove in his van to a gathering at his friend Charles's apartment.  An acquaintance of Love's on his way to the gathering stopped at the van to talk to Love.  County's television and stereo were inside the van, and the two long-necked wine bottles were nearby.  Love offered to sell the television and stereo to the acquaintance for $150, so the acquaintance left to make a phone call to see if he had an interested buyer.  When the acquaintance returned to the van, no one was there and the items were gone.

Meanwhile, Charles was returning to his apartment and encountered Love out front.  Love offered to sell Charles the television and stereo, and Charles bought them both for a total of $90.  Love helped carry the items up to Charles's apartment.  Charles dealt only with Love regarding this transaction.

Inside the apartment, a friend named Ramona asked Ragland about buying the wine bottles.  Love interjected and offered to sell them for $20.  Love and Patton then argued over which of them owned the wine bottles, with Love asserting, "Those are my mother fucking bottles."  After tussling with Patton, Love sold the wine bottles to Ramona for $10.

During the gathering, Ramona noticed something red on Ragland's shoe and asked him what it was.  Ragland claimed it was wine from a broken

4

bottle. But Love walked by and said Ragland had cut his foot and told him to "[w]ash that shit off."

The day after Thanksgiving, Ramona overheard Love say to Ragland, "You couldn't even knock him out."

Shortly after Thanksgiving, Charles sold County's television and stereo to a friend for $125. Love drove Charles to the friend's house to deliver the goods.

## 2. Testimony Excluded as to Love

Three witnesses testified at the preliminary hearing about inculpatory statements Ragland made that also implicated Love. The magistrate excluded the testimony as to Love on hearsay grounds, and admitted it only as to Ragland.

Ramona testified she confronted Ragland on the Sunday after Thanksgiving about the red stain on his shoe. Ragland admitted it was blood and confessed he had gone with Love and Patton to rob someone. Ragland said he knocked on the door to make sure no one was home, but the victim answered the door so Ragland hit him on the head. The victim fought back and grabbed a trophy to defend himself. When Ragland could not subdue the victim, Love "came in and took over the fight." Love tied up the victim and told Ragland to "[p]ut the stuff in the van." Love handed a knife to Patton and told him to "finish it." When Ragland returned to the room, the victim was no longer moving.

James C. and Ragland's brother testified they were present when Ragland confessed to Ramona. Their testimony was substantially similar to Ramona's.

5

### 3. Defense Evidence

The defense sought to implicate Patton. One of County's neighbors testified Patton had lived with County for a few months. And a police officer testified he found a portfolio containing Patton's personal papers in County's apartment.

A doctor testified he examined Love when he was arrested on unrelated charges on November 30. Love had no fresh injuries.

### B. Change of Plea

In April 1983, "wish[ing] to avoid the possibility of a 25 – life commitment" if convicted of first degree murder, Love entered into a plea bargain under which the prosecutor allowed him to plead guilty to second degree murder, which carried a maximum possible sentence of 15 years to life.

As the factual basis for his guilty plea, Love stipulated to the transcript of the preliminary hearing and the following statement by the prosecutor:

> "[O]n November 23rd, 1982, Roy Patton, [Love], and Steven Ragland entered the apartment of Claude County . . . with the intent to steal. Once inside the apartment, there was a struggle with Mr. County in which all three of the persons participated. That during the course of that struggle and while things were taken from the apartment, that is, a television set and a stereo and two wine bottles, as well as the wallet of Mr. County and other personal property, . . . Mr. County died. And he died as a proximate result of the injuries inflicted on him during the course of that struggle."

During the plea colloquy, the court asked Love, "You understand . . . that if I accept your plea of guilty, I am going to take those facts as being true. Do you understand that?" Love responded, "I understand it." After confirming with Love that his guilty plea was knowing and voluntary, the court accepted the plea.

6

## C. Sentencing Hearing

The probation officer recommended the court deny probation and sentence Love to 15 years to life. The probation officer's report included summaries of additional interviews of Ramona about Ragland's confession to her. After noting Love was "technically eligible for probation," the trial court stated that granting probation under the circumstances "simply is inconceivable."

Love's trial counsel then sought to create a favorable sentencing record for use at an eventual parole hearing. Counsel characterized Love's participation in the crime as less significant than Patton's ("who knew the victim and was obviously fairly instrumental in planning this particular crime") and Ragland's ("who inflicted the mortal blows").

In response, the prosecutor clarified the record regarding Love's "actual participation." The prosecutor stressed that, although Love may not have been the one to deliver the fatal blows, he told an accomplice to "finish it"; his knife was found at the crime scene; and he "was the moving party in selling all the stolen property."

The trial court stated it need not resolve the parties' conflicting factual characterizations because the court had no sentencing discretion—the prescribed sentence was 15 years to life. "Bearing that in mind," the court asked if there was "anything [Love's counsel] wanted to add." Love's counsel said, "No," and submitted on the matter.

The court sentenced Love to prison for 15 years to life.

## D. Resentencing Petition

In January 2019, Love filed a petition for resentencing under section 1170.95. He asserted in the petition that the record showed "unequivocally" that his murder conviction was based on the former felony-murder rule, and

that he could not be convicted of murder under the new law. After unsuccessfully challenging the constitutionality of Senate Bill 1437, the prosecution conceded Love had stated a prima facie case of eligibility. The trial court issued an order to show cause why relief should not be granted.

The prosecution responded to the merits of Love's petition, arguing he could still be convicted under the new felony-murder standard because he was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e)(3).)

In support, the prosecution sought to admit transcripts of the preliminary hearing, change of plea hearing, and sentencing hearing; and the probation officer's report. The prosecution argued these record were admissible because (1) the preliminary hearing and change of plea transcripts formed the factual basis for Love's plea; (2) the prosecutor's correction of Love's factual narrative at the sentencing hearing was an adoptive admission by Love because he did not object when a reasonable person would have; and (3) the probation officer's report constituted reliable hearsay.

In reply, Love objected to (1) the hearsay portions of the preliminary hearing transcript, (2) the change of plea hearing and sentencing hearing transcripts, and (3) the probation officer's report. He also argued the prosecution had not met its burden to prove beyond a reasonable doubt that he could be convicted under the new felony-murder standard.

### E. Trial Court's Ruling

At the outset of the evidentiary hearing on Love's petition, the trial court granted some of Love's evidentiary objections. First, the court struck the preliminary hearing testimony about Ragland's hearsay confession to Ramona. (See part I.A.2., *ante*.) Second, the court struck from the probation

8

report any reference to Ramona's recounting of Ragland's confession. The court reasoned that because it had already stricken the same statements from the preliminary hearing transcript, "[i]t wouldn't be right to say, well . . . , they don't come in through the preliminary hearing, but they come in through the probation reports."

The court overruled Love's objections to the change of plea hearing transcript and the sentencing hearing transcript. As to the latter, the court found the prosecutor's assertion that Love handed Patton a knife and told him to "finish it" was an adoptive admission by Love because neither he nor his counsel objected.

As to the merits, the court denied Love's petition. Although the court did "not find that [Love] delivered the fatal blow," the court found the killing occurred during "a residential burglary gone wrong," in which Love "was a direct aider and abettor" who "acted in reckless disregard for human life." Among other supporting factors, the court cited that Love (1) "was involved"; (2) "did nothing to assist the victim once the victim was injured"; (3) "profited from th[e] residential burglary after it was over"; and (4) told Patton to "go finish him."

## II.  DISCUSSION

Love contends the trial court erred in denying his resentencing petition because the court erroneously found the prosecutor's statements at the sentencing hearing to be an adoptive admission by Love, and, in any event, because insufficient evidence supports the court's finding that Love was a major participant in the underlying felony who acted with reckless indifference to human life. We need not reach Love's claim of evidentiary error because we conclude any such error was harmless inasmuch as

9

substantial evidence supports the trial court's findings even without considering the prosecutor's statements at the sentencing hearing.

## A. Legal Principles

To protect the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability" (Stats. 2018, ch. 1015, § 1, subd. (d)), the Legislature enacted Senate Bill 1437 to narrow the scope of liability under the felony-murder rule,[3] and to provide a mechanism by which individuals convicted under the old standard could petition for resentencing if they could not be convicted under the new, narrower standard. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Under the felony-murder rule before Senate Bill 1437, "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony . . . without further examination of his or her mental state." (*Lamoureux, supra*, 42 Cal.App.5th at pp. 247-248; see § 189, subd. (a) [specifying felonies, including burglary and robbery].) After Senate Bill 1437, however, "unless the victim is a peace officer killed in the line of duty, a defendant cannot be liable for first degree felony murder unless the defendant [1] was the actual killer, [2] acted with intent to kill, or [3] was a major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Eynon* (2021) 68 Cal.App.5th 967, 974;

---

[3]    Senate Bill 1437 also narrowed the scope of liability under the natural and probable consequences doctrine. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248 (*Lamoureux*).) We need not discuss this doctrine because Love based his petition on the ground he "unequivocally" was prosecuted on a felony-murder theory.

see § 189, subds. (e)(1)-(3),[4] (f); *Gentile, supra*, 10 Cal.5th at p. 842; *Lewis, supra*, 11 Cal.5th at p. 959.)

Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under the newly narrowed felony-murder doctrine. (*Gentile, supra*, 10 Cal.5th at p. 843; *Lewis, supra*, 11 Cal.5th at p. 959; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984 (*Ramirez*).) If the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner could still be convicted under the newly narrowed felony-murder rule. (§ 1170.95, subds. (c), (d)(1)-(3); see *Lewis*, at p. 960; *Ramirez*, at p. 984.)

While this appeal was pending, the Legislature amended section 1170.95, subdivision (d)(3) to clarify that "[t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated

---

[4] Section 189, subdivision (e) states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

evidence, and matters judicially noticed." (Stats. 2021, ch. 551, § 2.)[5] "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *Lewis*, *supra*, 11 Cal.5th at p. 960.)

"If the prosecution fails to sustain its burden of proof, the prior conviction . . . shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3); see *Lamoureux*, *supra*, 42 Cal.App.5th at p. 249.)

We review the trial court's determination at the section 1170.95 evidentiary hearing for substantial evidence. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 747; accord, *Ramirez*, *supra*, 71 Cal.App.5th at p. 985.) Under this standard, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation]. We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)

---

5      We will assume without deciding that the amended version of section 1170.95, subdivision (d)(3) applies.

## B. Analysis

Considering the totality of the circumstances in the light most favorable to the trial court's ruling, we conclude substantial evidence supports the trial court's finding that Love could be convicted of murder under the new felony-murder standard because he was a major participant in the underlying felony and acted with reckless indifference to human life.

### 1. Major Participant

"The ultimate question pertaining to being a major participant is 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major." ' " (*People v. Clark* (2016) 63 Cal.4th 522, 611 (*Clark*).) To assist in answering this question, the California Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) articulated the following considerations: " 'What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inactions play a particular role in the death? What did the defendant do after lethal force was used?' " (*Banks*, at p. 803.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

Substantial evidence supports several of the *Banks* considerations. First and foremost, Love "was present at the scene of the killing, in a position to . . . prevent the actual murder, and . . . his . . . actions . . . play[ed] a particular role in the death." (*Banks, supra*, 63 Cal.4th at p. 803.) As the

13

factual basis for his guilty plea, Love acknowledged he entered County's apartment with Patton and Ragland to steal County's property. Once inside, the three perpetrators struggled with County. It is reasonable to infer from the nature of County's injuries and the presence of a bloody bowling pin, trophy, and knife, that one of the perpetrators used these objects to bludgeon and cut County *during the struggle in which Love was participating*. Love's participation in a three-on-one struggle facilitated the murder by preventing County from defending himself from the assailant inflicting the deadly blows. Additionally, the fact Love had no fresh injuries shortly after the offense supports a reasonable inference he did not intervene to prevent the infliction of deadly blows once his cohort began bludgeoning County.

Love's presence at, and participation in, the underlying felony strongly supports the trial court's finding he was a major participant. (See *Banks*, *supra*, 63 Cal.4th at p. 805 [finding, by contrast, that the defendant was not a major participant in a robbery felony murder because he was merely the getaway driver and "[d]uring the robbery and murder, [he] was absent from the scene, sitting in a car and waiting"].)

Second, it is reasonable to infer Love played a significant role in planning the crime because witnesses later saw the stolen goods in his van and he was the only perpetrator to sell and profit from the stolen goods. Indeed, Love directly asserted his ownership vis-à-vis Patton at the gathering.

Third, Love's conduct " 'after lethal force was used' " (*Banks*, *supra*, 63 Cal.4th at p. 803) also supports the finding he was a major participant. We infer from the fact County was still bound and had vomit in his mouth, nose, and airway when his body was found several days after the crime, that Love did not render any aid at the scene or call for help after leaving the scene.

14

(See *id.* at p. 807 [noting the defendant "did not see the shooting happen . . . and could not do anything to . . . render assistance"].)

Because substantial evidence strongly supports these *Banks* considerations, it is of no moment whether the remaining considerations are neutral or favor Love. (See *Banks*, *supra*, 61 Cal.4th at p. 803 [" 'No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question . . . .' "].)

## 2. Reckless Indifference to Human Life

"Reckless indifference to human life has a subjective and an objective element. [Citation.] As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citation.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' [Citation.] 'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement." (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*), brackets in original.)

In *Clark, supra*, 63 Cal.4th 522, the California Supreme Court articulated the following considerations for determining whether a defendant acted with reckless indifference to human life: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he

15

or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th at p. 677 [listing factors set forth in *Clark*, at pp. 618-623].)

The reckless indifference considerations " 'significantly overlap' " with the major participant considerations, " 'for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Clark*, *supra*, 63 Cal.4th at p. 615.) As with the major participant considerations, " '[n]o one of [the reckless indifference] considerations is necessary, nor is any one of them necessarily sufficient.' " (*Id.* at p. 618.) "We analyze the totality of the circumstances to determine whether [the defendant] acted with reckless indifference to human life." (*Scoggins*, *supra*, 9 Cal.5th at p. 677.)

Considering the totality of the circumstances, we conclude substantial evidence supports several *Clark* considerations.

Most significantly, Love was physically present during the commission of the underlying felony. The United States Supreme Court has "stressed the importance of presence to culpability." (*Clark*, *supra*, 63 Cal.4th at p. 619, citing *Tison v. Arizona* (1987) 481 U.S. 137, 158 (*Tison*).) Where "the murder is a culmination or a foreseeable result of several intermediate steps . . . , 'the defendant's presence allows him to observe his cohorts so that it is fair to conclude that he shared in their actions and mental state . . . . [Moreover,] the defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts. If the defendant fails to act as a restraining

16

influence, then the defendant is arguably more at fault for the resulting murders.' " (*Clark*, at p. 619.)

As noted, Love acknowledged as the factual basis for his guilty plea that he was present for, and participated in, the three-on-one struggle in which County sustained fatal injuries. Additionally, the record supports a reasonable inference that Love did not intervene to prevent the murder once one of his cohorts began bludgeoning County. The record also supports a reasonable inference that Love neither rendered aid at the scene nor summoned help after leaving County in an extremely vulnerable position—on the floor with his hands tied behind his back and a towel over his head, with serious injuries to his face and brain, and with vomit in his mouth, nose, and airway. (See *Clark*, *supra*, 63 Cal.App.4th at p. 619 [noting the United States Supreme Court and "[o]ther appellate courts have considered relevant a defendant's failure to provide aid while present at the scene"]; *Scoggins*, *supra*, 9 Cal.5th at p. 672 [finding no reckless indifference where, "[a]fter the shooting, [the defendant] walked over to [the victim] and checked if he was still breathing," and then remained at the scene and was "cooperative" with law enforcement].) These considerations strongly support a finding Love acted with reckless indifference to human life.

The duration of the felony weighs slightly against Love. The fact a struggle occurred, County's apartment was ransacked, and his property removed support a reasonable inference that the duration of the felony was not insignificant. (See *Scoggins*, *supra*, 9 Cal.5th at pp. 680-681 [finding the duration "very limited" where a planned-beating-turned-fatal-shooting "lasted between a few seconds and three to five minutes"].) But it was not a prolonged kidnapping during which the victims were moved to a different location before being murdered. (See *Tison*, *supra*, 481 U.S. at p. 151.)

17

Love's knowledge of factors bearing on his cohorts' likelihood of killing also weighs only slightly against him. Love introduced evidence at the preliminary hearing showing Patton had previously lived with County. Thus, "there was a chance [Patton] would be recognized, increasing the risk of violence in order to evade apprehension." (*People v. Proby* (1998) 60 Cal.App.4th 922, 929.) And, although nothing in the record indicates Love had advance knowledge of factors indicating his cohorts' likelihood of killing County, a "[d]efendant's knowledge of such factors . . . may occur during the felony." (*Clark*, *supra*, 63 Cal.4th at p. 621.) Love would certainly have become aware of his cohorts' likelihood of killing County when one or more of them began bludgeoning County with a bowling pin or trophy and cutting him with a knife. Yet, the record supports the inference Love did nothing at that point to prevent the murder or render aid.

Finally, nothing in the record suggests Love made any "efforts . . . to minimize the risks of . . . violence during the felony." (*Clark*, *supra*, 64 Cal.4th at p. 621; see *id.* at p. 622 [finding the defendant less culpable where he planned for his cohort to use an unloaded gun to rob a store "after closing time, when most of the employees had left the building"].) Notably, Love successfully excluded from the petition hearing any evidence indicating he and his cohorts intended to burglarize County's apartment when he was not home. And even if such evidence had been admitted, that same evidence would also have shown that Love and his cohorts saw County's car in the parking lot before approaching his apartment, thus indicating he was home before they proceeded to break in anyway.

In sum, "nonkiller felony murderers fall on a continuum, a spectrum of culpability." (*Banks*, *supra*, 61 Cal.4th at p. 811.) We are satisfied that— even without considering the challenged evidence—substantial evidence

18

supports the trial court's finding that Love was a major participant in the underlying felony who acted with reckless indifference for human life. Accordingly, the court did not err in denying Love's petition for resentencing under section 1170.95.

## DISPOSITION

The order denying Love's petition for resentencing under section 1170.95 is affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.